UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION

LEONARDO SURDO,

                              Plaintiff,

        - versus -

STAMINA PRODUCTS, INC., BLUESTEM
BRANDS, INC. d/b/a FINGERHUT, and
BLUESTEM BRANDS, INC.,

                              Defendant.

MEMORANDUM
AND ORDER
15-CV-2532

A P P E A R A N C E S:

    IRWIN & POZNANSKI, LLP
        233 Broadway, 5th Floor
        New York, New York 10279
    By:    Joshua B. Irwin
        *Attorneys for Plaintiff*

    ROUSE HENDRICKS GERMAN MAY, P.C.
        1201 Walnut, Suite 2000
        Kansas City, Missouri 64106
    By:    Brandon J. Boulware
        *Attorneys for Defendants*

    ZAREMBA BROWNELL & BROWN PLLC
        40 Wall Street, 28th Floor
        New York, New York 10005
    By:    Richard J. Brownell
        *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        Defendants Stamina Products, Inc. ("Stamina") and Bluestem Brands, Inc.

("Bluestem") bring this motion to dismiss pursuant to Rule 12(b)(2) for lack of personal

jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[1] For the reasons that follow, the motion to dismiss for lack of personal jurisdiction is denied. The motion to dismiss for failure to state a claim is granted, but Surdo is granted leave to amend his complaint on or before October 23, 2015.

BACKGROUND

Surdo's amended complaint alleges the following facts, which I assume to be true for the purposes of this motion. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Pertinent documents submitted by the parties may be considered and are construed in the light most favorable to Surdo. *See CutCo Indus., Inc., v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

In 2007, Bluestem was an online retailer, which sold products bearing the trademark Fingerhut. Bluestem purchased home exercise equipment from Stamina and sold it to consumers. Am Compl. ¶¶ 95-97. Plaintiff Leonardo Surdo is a resident of New York who bought a Gravity Inversion Therapy Table (the "Gravity Table") from Bluestem's website. Am. Compl. ¶ 67. Stamina is the manufacturer of the Gravity Table. Am. Compl. ¶ 10.

On April 21, 2014, Surdo was using the Gravity Table for its intended purpose, as he had in the past, when it malfunctioned and caused him to sustain personal injuries. Am. Compl. ¶¶ 118-22, 135. Surdo sued the defendants for negligence, strict liability, and breach of warranty.

Stamina is a Missouri corporation with its principal place of business in Missouri. *See* Am Compl. ¶ 1; Declaration of Charity Bates ("Bates Dec."), ECF No. 18-1, Exh. A, ¶ 4.

---

[1] The defendants also included "Bluestem Brands, Inc. d/b/a/ Fingerhut," but the parties agreed at oral argument that Fingerhut is a trademark, not an entity, and that Stamina and Bluestem are the two proper defendants before me. The Clerk is directed to amend the caption accordingly. Doing so moots the defendants' motion to strike pursuant to Rule 12(f).

Stamina was authorized to and did transact business within New York. Am. Compl. ¶¶ 5-6. In addition, it manufactured the Gravity Table that caused Surdo's injury. *See* Am. Compl. ¶ 10.

Bluestem is a Delaware Corporation. *See* Am. Compl. 76; Declaration of Andrea C. Street ("Street Dec."), ECF No. 18-1, Exh. B, ¶ 4. It distributed the Gravity Table via the Fingerhut website. Am. Compl. ¶ 64-65. Bluestem (doing business as Fingerhut) had an agreement with Stamina to sell and distribute the Gravity Table. Am. Compl. ¶¶ 23-29. It sold Surdo a Gravity Table on August 15, 2007, which Fingerhut later delivered to Surdo at his home in Brooklyn. Am. Compl. ¶¶ 67, 70

Stamina claims that it has never had any communications with Surdo regarding the Gravity Table at issue. Bates Dec., Exh. A, ¶ 10. Bluestem Brands claims it has had no communications with Surdo regarding the Gravity Table beyond those related to his online purchase and the delivery of the Gravity Table. Street Dec., Exh. B., ¶ 16.

Defendants assert that they do not own assets or have employees in the State of New York. Bates Dec., Exh. A, ¶¶ 6-7; Street Dec., Exh. B, ¶¶ 5-6. They are neither registered to do business in the State of New York nor maintain a bank account here. Bates Dec., Exh. A, ¶¶ 8-9; Street Dec., Exh. B, ¶¶ 7-8.

## DISCUSSION

A.  *The Legal Standards*

  1.  *Personal Jurisdiction*

In a motion to dismiss for lack of personal jurisdiction pursuant to a Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Whitaker v. Am. Telecasting, Inc.*, 261 F3d 196, 208 (2d Cir. 2001). The resolution of such a motion to dismiss for lack of personal jurisdiction in a diversity case entails a two-step

analysis. First, the court "must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant." *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990). "If jurisdiction is appropriate under the relevant statute, the court must then decide whether exercise of jurisdiction comports with due process." *Id.*

In New York, personal jurisdiction over an out-of-state defendant is governed by N.Y. C.P.L.R. § 302(a)(1). *Penguin Grp. (USA) Inc., v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity. " *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). With respect to minimum contacts, I first must determine whether the defendants have sufficient contacts with New York to justify the Court's exercise of personal jurisdiction. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (2d Cir. 2010)). "For purposes of this initial inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *Metro. Life*, 84 F.3d at 567. Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 567-68 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & nn.8-9). General jurisdiction "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id*. at 568. To determine the

strength of the contacts under both N.Y. C.P.L.R. § 302(a)(1) and due process, a Court looks to the totality of the defendants' contact with the forum state. *Chloe*, 616 F.3d at 164.

2. *Failure to State a Claim*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege facts sufficient to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012). In making this determination, a court should assume the truth of all well-pleaded factual allegations in the complaint "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations omitted)). In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

B. *Personal Jurisdiction Over the Defendants*

Defendants do not argue that N.Y. C.P.L.R. § 302(a)(1) does not apply to them. Instead, they argue that the exercise of jurisdiction would violate due process. Thus, the analysis focuses on whether the exercise of personal jurisdiction comports with due process.

1. *Bluestem*

The amended complaint alleges that Bluestem is a Delaware corporation, which transacted business in New York, such as the sale of Stamina products to consumers, including the Gravity Table to Surdo. Am Compl. ¶¶ 1, 28, 76-92. Bluestem sold the Gravity Table

through its own website. Am. Compl. ¶¶ 28-29, 47, 62, 65, 97, 100. By virtue of its business activity (*i.e.*, the sale of exercise equipment, including the Gravity Table) to consumers in New York, Bluestem has "purposefully avail[ed] itself of the privilege of conducting activities" within New York such that "it has clear notice that it is subject to suit" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal quotation and citation omitted). While minimum contacts alone do not satisfy due process, Bluestem's defense of a suit in New York comports with the traditional notions of "fair play and substantial justice." *See LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 217 (2d Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

The exercise of personal jurisdiction over Bluestem does not offend its due process rights. *See Metro. Life*, 84 F.3d at 568 (stating that the court must consider (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 104, 113-14 (1987)). Bluestem's sales and distribution of exercise equipment to consumers in the state of New York, including its sale of the Gravity Table to Surdo, make the exercise of personal jurisdiction over it consistent with the traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316.

    2.    *Stamina*

Stamina argues that Surdo has not alleged any transaction or contact with it. Def. Br. at 9. However, the amended complaint alleges that Stamina manufactured the Gravity Table

and entered into an agreement with Bluestem to sell the Gravity Table to consumers in New York. Am. Compl. ¶¶ 10, 23-29. While "[t]he placement of goods into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum State[,]" additional conduct may indicate that the defendant intended to or purposely served the market in the state. *Asahi Metal*, 480 U.S. at 112.

For example, a court can find that a defendant directed its efforts toward the forum state if the defendant designed the product for the forum state market, advertised in the forum state, or marketed the product through a distributor who agreed to serve as the sales agent in the forum state. *Id.* Here, Stamina entered into an agreement with Bluestem pursuant to which Bluestem sold the Gravity Table, including in New York. Am. Compl. ¶¶ 23-29. Furthermore, the amended complaint alleges that Stamina advertised the Gravity Table via sources available in New York. Am. Compl. ¶ 11. Surdo also submits a statement from Stamina's website that describes how it has "developed a broad distribution base, including mass merchants, sporting goods dealers, catalogs, internet retailers, and TV shopping networks." Pl. Opp. Br., ECF No. 19-4, Exh. 3. It stands to reason that Stamina intended to serve a broad market that included New York. I conclude that there is a substantial connection between Stamina and New York, and that the exercise of personal jurisdiction over Stamina accordingly comports with the requirements of due process. *Asahi Metal*, 480 U.S. at 112. The traditional notions of "fair play and substantial justice" are not offended here. *See Metro. Life*, 84 F.3d at 568; *LaMarca*, 95 N.Y.2d at 217-18.

C.  *The Motion to Dismiss for Failure to State a Claim*

    1.  *Design Defect*

"Under New York law, a strict products liability claim based on a design defect theory is premised on a manufacturer's failure to properly design a product, which is then placed on the market despite posing inappropriate risks." *Cavanagh v. Ford Motor Co.*, No. 13-CV-4584 (JS)(WDW), 2014 WL 2048571, at *2 (E.D.N.Y. May 19, 2014) (internal quotations omitted). A "defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is[,] one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (2d Cir. 1983) (quoting *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 479 (N.Y. 1980)). A plaintiff is not required to show that the manufacturer acted negligently. *Id.* Rather, he or she must establish that the product as designed was not reasonably safe. *Id.* To do this, the plaintiff must allege "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Cavanagh*, 2014 WL 2048571, at *2 (quoting *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 403 (S.D.N.Y. 2013)). Thus, a design defect claim is properly dismissed where a plaintiff fails to plead facts alleging the existence of a feasible design alternative. *Id.*; *see also DiBartolo v. Abbott Lab.*, 914 F. Supp. 2d 601, 622-23 (S.D.N.Y. 2012).

Here, Surdo does not allege how the product is defectively designed, and makes only conclusory allegations that the Gravity Table was "inherently dangerous" and "defective," that its parts were "hazardous, unsuitable," and that it was "defectively designed." Am. Compl.

¶¶ 123-24, 138. Such conclusory statements do not establish how the Gravity Table as designed posed a substantial likelihood of harm.[2] Furthermore, the amended complaint does not plead an alternative feasible design. Pl. Opp. Br. ¶ 91; *see Cavanaugh*, 2014 WL 2048571, at *2. Thus, the defective design claim is insufficiently pled and is dismissed.

    2.    *Manufacturing Defect*

To plead a manufacturing flaw under New York law, the plaintiff must show that a specific product unit was defective as a result of "some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in the construction, and that the defect was the cause of plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (quoting *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129 (N.Y. 1981)) (internal quotations omitted). A manufacturing defect exists "when the unit in question deviates in quality and other performance standards from all of the other identical units." *Id*. "The crux of a strict liability manufacturing defect claim is the product's failure to perform as expected due to an error in the manufacturing process that resulted in a defect." *Derienzo v. Trek Bicycle Corp.,* 376 F. Supp. 2d 537, 560 (S.D.N.Y. 2005).

Surdo does not plead any facts to support a claim that the Gravity Table failed to perform due to a defect that was the result of the manufacturing process. Though the complaint states that the product was "carelessly, negligently, and defectively designed, manufactured [and] produced[,]" Am. Compl. ¶ 125, that does not allege an error in the manufacturing process – it only states that there was one. Furthermore, Surdo concedes that the amended complaint fails to allege how the Gravity Table at issue deviated in quality and performance from other Gravity

---

[2] Surdo does include as an exhibit in support of his opposition to the motion an announcement by the U.S. Consumer Product Safety Commission of a safety recall of the Gravity Table, which indicates that a "weld in the center of the inversion table can fail . . . posing a fall hazard to consumers." *See* Pl. Opp. Br., ECF No. 19-3, Exh. 2.

Tables. Pl. Opp. Br. ¶ 95; *see also Colon*, 199 F. Supp. at 85 (S.D.N.Y. 2001). In sum, he has failed to state a manufacturing defect claim.

        3.     *Failure to Warn*

"Under New York law, a plaintiff establishes a prima facie case for strict liability based on a failure to warn if he can demonstrate that (1) the manufacturer had a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that [the] failure to do so was the proximate cause of harm." *Gunn v. Hytrol Conveyor Co., Inc.*, No. 10-CV-00043 (JG), 2013 WL 2249241, at *11 (E.D.N.Y. May 22, 2013) (citing *Colon*, 199 F. Supp. 2d at 84). It follows that "a failure to warn cause of action is appropriately dismissed if a plaintiff does not plead facts indicating how the provided warnings were inadequate." *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012).

The amended complaint alleges that the defendants failed to warn users of the Gravity Table about its "known hazards, dangers and defects" and that this caused Surdo to sustain injuries. Am. Compl. ¶ 128-29. However, Surdo does not plead that the defendants had a duty to warn; he does not specify the danger he was not warned about; and he does not describe how the failure to warn resulted in his injuries. Furthermore, he fails to plead facts stating how the provided warnings were inadequate, further warranting dismissal of the claim. *See Pfizer, Inc.*, 839 F. Supp. 2d (dismissing failure to warn claim because plaintiff did not plead facts indicating how provided warnings were inadequate); *Wendell v. Johnson & Johnson*, No. C 09-04124 (CW), 2010 WL 271423, at *4 (N.D. Cal. Jan. 20, 2010) (dismissing a failure to warn claim because the plaintiffs failed to allege how the warnings about drug were inadequate).

4. *Negligence Claim*

"To make out a prima facie case for negligence in New York, a plaintiff must show (1) that the manufacturer owed plaintiff a duty to exercise reasonable care; (2) a breach of that duty by failure to use reasonable care so that a product is rendered defective, *i.e.* reasonably certain to be dangerous; (3) that the defect was the proximate cause of the plaintiff's injury; and (4) loss or damage." *Colon*, 199 F. Supp. at 82. Surdo does not plead that the defendants had a duty to him; he does not specify how the defendants breached any such duty; and he does not describe how the breach resulted in his injuries.

5. *Breach of Warranty*

Surdo's amended complaint does not specify whether he bases his claims under a breach of express warranty or breach of implied warranty. However, he fails to state a claim under either theory.

a. *Breach of Express Warranty*

Section 2-313 of the N.Y. U.C.C. governs express warranties. Pursuant to this section, a seller creates an express warranty by

> Any affirmation of fact or promise made. . . . to the buyer which relates to the goods and becomes part of the basis of the bargain. . . . Any description of the goods which is made part of the basis of the bargain. . . . Any sample or model which is made part of the basis of the bargain . . . .

N.Y. U.C.C. § 2-313(1)(a)-(c). To demonstrate the creation of an express warranty under New York law, a plaintiff "must prove that the statement falls within the definition of a warranty, that she relied on it, and that it became part of the basis for the bargain." *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (quoting *Daley v. McNeil Consumer Prod., Co.*, 164 F. Supp. 2d 367, 377 (S.D.N.Y. 2001)).

Surdo claims to have made "sufficient factual allegations that a warranty existed, that it was breached, and that [he] had relied upon that warranty." Pl. Op. Br. ¶ 111. However, a review of the complaint reveals that Surdo fails to allege facts that would state a claim for the breach of express warranty. He does not allege what statement the defendants made, which he in turn relied on. The amended complaint states that the defendants warranted that the Gravity Table was safe, suitable, appropriate, and fit for use as intended, Am. Compl. ¶138, but these allegations alone are insufficient to sustain his claim because he fails to describe how this representation was made or how he relied on it. *See Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 285 (E.D.N.Y. 2009); *Lake v. Kardjian*, 874 N.Y.S.2d 751 ,755 (N.Y. Sup. Ct. 2008) ("Plaintiff has not identified any specific statements . . . which would constitute an express warranty, and has thereby failed to establish the existence of a claim[.]").

  b. *Breach of Implied Warranty*

Under New York law, the implied warranty of merchantability is breached if the good sold is not "fit for the ordinary purposes for which such goods are used." *See Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (quoting N.Y. U.C.C. 2-314(2)(c)). "To establish that a product is defective for purposes of a breach of implied warranty of merchantability claim, a plaintiff must show that the product was not reasonably fit for its intended purpose, an inquiry that focuses on the expectations for the performance of the product when used in the customary, usual[,] and reasonably foreseeable manners." *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420-21 (S.D.N.Y. 2011) (quoting *O'Sullivan v. Duane Reade, Inc.*, 910 N.Y.S.2d 763, at *6 (N.Y. Sup. Ct. 2010). Surdo has not pled facts that would give rise to an inference that the Gravity Table "was not minimally safe for its expected purpose[.]" *See Caronia*, 715 F.3d at 434 (quoting *Denny v. Ford Motor Co.*, 87 N.Y.S.2d 248,

259 (N.Y. 1995); *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 260 (E.D.N.Y. 2014). The allegations he makes are conclusory and thus "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss under Rule 12(b)(2) is denied,[3] and the motion to dismiss under Rule 12(b)(6) is granted. Surdo's request to amend his complaint is granted, as Federal Rule of Civil Procedure 15(a) requires that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

So ordered.

John Gleeson, U.S.D.J.

Dated: October 9, 2015
      Brooklyn, New York

---

[3] Surdo's request for an order directing discovery on the issue of jurisdiction or a hearing on the issue is denied as moot.